******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

REGINALD HOLSTON *v.* NEW HAVEN
POLICE DEPARTMENT ET AL.
(SC 19631)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued September 13—officially released November 22, 2016*

*Jason M. Dodge*, for the appellants (defendants).

*James F. Aspell*, for the appellee (plaintiff).

*Opinion*

EVELEIGH, J. The named defendant, the New Haven Police Department,[1] appeals[2] from the decision of the Workers' Compensation Review Board (board), which affirmed the decision of the Workers' Compensation Commissioner for the Third District (commissioner), awarding heart disease benefits to the plaintiff, Reginald Holston, pursuant to General Statutes § 7-433c (a).[3] On appeal, the defendant asserts that the board improperly determined that the plaintiff's heart disease claim was timely. Specifically, the defendant claims that the board improperly affirmed the decision of the commissioner that the plaintiff's hypertension and heart disease were separate diseases, each with its own one year limitation period for filing a claim for benefits. We disagree with the defendant and, accordingly, affirm the decision of the board.[4]

The record reveals the following undisputed facts and procedural history. The plaintiff was hired by the defendant as a police officer in 1996 and remained a regular member of that paid municipal police department at all points relevant to the present case. When he was hired, the plaintiff passed a preemployment physical examination that did not reveal any evidence of hypertension or heart disease.

On March 10, 2011, the plaintiff suffered a myocardial infarction. The plaintiff underwent an angioplasty and stent implantation following a diagnosis of heart disease. He remained hospitalized for approximately four days after the procedure and was out of work for three or four months. The plaintiff was prescribed several medications for his heart disease. On March 14, 2011, the plaintiff filed a claim for benefits under § 7-433c for hypertension and heart disease. The plaintiff listed the date of injury as March 10, 2011.

At the hearing before the commissioner, Roy Kellerman, the plaintiff's physician, testified that he began treating the plaintiff in 1995 for an ankle injury. The commissioner found that Kellerman had diagnosed the plaintiff with hypertension in October, 2009, and had conveyed that diagnosis to him. The commissioner concluded, therefore, that the plaintiff's claim for benefits related to hypertension was untimely because it was filed more than one year after he became aware of his diagnosis of hypertension.

On the basis of the testimony of Kellerman and Martin Krauthamer, a physician obtained by the defendant, the commissioner determined that the plaintiff's preexisting hypertension was a significant contributing factor in the development of his heart disease. The commissioner further found, however, that there were additional significant contributing factors in the development of the plaintiff's heart disease, including his high cholesterol and his gender.

Accordingly, the commissioner dismissed the plaintiff's claim for benefits related to his hypertension as untimely, but granted his claim for benefits related to his heart disease and myocardial infarction. The defendant appealed to the board, and the board affirmed the decision of the commissioner.[5] This appeal followed.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested[6] interpretation . . . ." (Footnote added; internal quotation marks omitted.) *Estate of Rock* v. *University of Connecticut*, 323 Conn. 26, 30, 144 A.3d 420 (2016).

In the present case, the defendant's claim raises an issue of statutory construction. Specifically, the defendant asserts that the board improperly affirmed the decision of the commissioner that the plaintiff's claim for benefits related to his heart disease and myocardial infarction was timely filed because, under § 7-433c, it was a separate disease from the earlier diagnosed hypertension. "When interpreting the statutory provisions at issue in the present case, we are mindful of the proposition that all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees. . . . This proposition applies as well to the provisions of [§] 7-433c . . . because the measurement of the benefits to which a § 7-433c claimant is entitled is identical to the benefits that may be awarded to a [claimant] under . . . [the Workers' Compensation Act]. . . . We also recognize, however, that the filing of a timely notice of claim is a condition precedent to liability and a jurisdictional requirement that cannot be waived." (Citation omitted; internal quotation marks omitted.) *Ciarlelli* v. *Hamden*, 299 Conn. 265, 277–78, 8 A.3d 1093 (2010).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent

of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Footnote omitted; internal quotation marks omitted.) *Vincent* v. *New Haven*, 285 Conn. 778, 784–85, 941 A.2d 932 (2008).

The parties do not dispute on appeal to this court that the plaintiff's physician diagnosed him with hypertension in 2009 and conveyed this diagnosis to the plaintiff at that time. It is also not disputed that the plaintiff's claim for benefits related to his hypertension was not timely because it was filed in March, 2011, beyond one year from his diagnosis of hypertension. See footnote 5 of this opinion. On appeal, the defendant asserts that the board improperly concluded that the plaintiff's claim for benefits related to heart disease was timely filed because the heart disease was significantly related to the prior diagnosis for hypertension. Specifically, the defendant claims that, because the commissioner determined that the plaintiff's hypertension was a "significant factor" in his heart disease and the plaintiff never filed a timely claim for benefits related to hypertension, the plaintiff should be precluded from filing a claim for benefits related to the heart disease.

We begin with the text of the statute. Section 7-433c (a) provides in relevant part: "Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused

by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment . . . ."

"It is settled that, because . . . § 7-433c (a) does not set forth a limitation period for filing a claim but provides for the administration of benefits in the same amount and the same manner as that provided under [the Workers' Compensation Act] if such death or disability was caused by a personal injury which arose out of and in the course of his employment, the one year limitation period of [General Statutes] § 31-294c (a) governs claims filed under § 7-433c." (Internal quotation marks omitted.) *Ciarlelli* v. *Hamden*, supra, 299 Conn. 278.

The defendant asserts that the one year limitation period for all of the plaintiff's claims began to run on the date he was diagnosed with hypertension because the hypertension and heart disease were related. The plain language of § 7-433c belies that claim. Section 7-433c uses the phrase "hypertension or heart disease" repeatedly. "We have held that the use of the word 'or' in a statute 'indicates a clear legislative intent of separability.' " *Sams* v. *Dept. of Environmental Protection*, 308 Conn. 359, 404, 63 A.3d 953 (2013). Thus, because § 7-433c is written in the disjunctive, we conclude that a plaintiff can file a claim for benefits related to either hypertension or heart disease. Furthermore, the use of the disjunctive term "or" in § 7-433c indicates that the legislature intended for hypertension and heart disease to be treated as two separate diseases for the purposes of § 7-433c. Accordingly, we conclude that the plain language of the statute demonstrates that the failure to file a timely claim for benefits related to hypertension does not bar a later timely claim for heart disease.

Moreover, the medical evidence in the present case supports the board's conclusion that the plaintiff's hypertension and heart disease were separate medical conditions. The plaintiff's physician, Kellerman, testified that the hypertension and the myocardial infarction were separate medical conditions. Furthermore, the physician obtained by the defendant, Krauthamer, also recognized that hypertension and heart disease are separate medical conditions. Krauthamer testified that, although the plaintiff's "hypertension is a significant factor in the causation of his [heart disease]," other risk factors—including age, and male gender—also played a role in the plaintiff's development of heart disease.

Nevertheless, the defendant asserts that § 7-433c bars the plaintiff's claim for benefits pursuant to § 7-433c in the present case because the commissioner determined that his hypertension was a significant factor in his heart disease and therefore, the two are causally connected. We disagree.

The plain language of § 7-433c demonstrates that a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department is entitled to benefits under the statute when the officer meets the following requirements: (1) has passed a preemployment physical; (2) the preemployment physical failed to reveal any evidence of hypertension or heart disease; (3) suffers either off duty or on duty any condition or impairment of health; (4) the condition or impairment of health was caused by hypertension or heart disease; and (5) the condition or impairment results in his death or his temporary or permanent, total or partial disability. The statute contains no other requirements to qualify for its benefits.

Indeed, as this court has previously explained, unlike traditional workers' compensation, § 7-433c does not require that the claimant prove that the injury was caused by his or her employment. Instead, as this court has recognized, "the underlying legislative purpose [of § 7-433c] was social rather than medical. More specifically, the legislature's intent was to afford the named occupations with a bonus by way of a rebuttable presumption of compensability when, under the appropriate conditions, the employee suffered heart disease or hypertension." *Malchik* v. *Division of Criminal Justice*, 266 Conn. 728, 740, 835 A.2d 940 (2003). This court has further explained that "§ 7-433c payments constitute special compensation, or even an outright bonus, to qualifying policemen and firemen. . . . [T]he outright bonus provided by the statute is that the claimant is not required to prove that the heart disease is causally connected to his employment, which he would ordinarily have to establish in order to receive benefits pursuant to the Workers' Compensation Act. . . . Thus, although [the Workers' Compensation Act] is used . . . as a procedural avenue for administration of the benefits under § 7-433c . . . an award under § 7-433c is not a workers' compensation award." (Citations omitted; internal quotation marks omitted.) *Carriero* v. *Naugatuck*, 243 Conn. 747, 754–55, 707 A.2d 706 (1998). Accordingly, the statute does not require the plaintiff to prove causation in order to make a claim for benefits.

The defendant asserts that our resolution of the plaintiff's claim should be guided by *Suprenant* v. *New Britain*, 28 Conn. App. 754, 611 A.2d 941 (1992). Specifically, the defendant asserts that, in *Suprenant*, the Appellate Court recognized that the legislature considered heart disease and hypertension interrelated. We disagree. In *Suprenant*, the Appellate Court affirmed a workers' compensation decision denying benefits related to heart disease pursuant to § 7-433c when the claimant's preemployment physical revealed evidence of hypertension, but not heart disease. Id., 754–56. In doing so, the Appellate Court explained that, in order to qualify for any benefits under § 7-433c, a claimant must pass a preem-

ployment physical that does not reveal evidence of either hypertension or heart disease. Id., 758–59.

*Suprenant* is distinguishable from the present case. In *Suprenant*, the Appellate Court explained that § 7-433c requires the claimant to pass a preemployment physical with no evidence of either hypertension or heart disease. Id. The claim in *Suprenant* failed because the claimant did not satisfy that condition precedent to filing a claim for benefits pursuant to § 7-433c. In the present case, there is no claim that the plaintiff did not pass his preemployment physical or that it revealed evidence of hypertension or heart disease. Instead, the plaintiff was diagnosed with hypertension after he was employed by the defendant. Nothing in *Suprenant* indicates that a prior diagnosis of hypertension while employed will bar a later claim for benefits related to hypertension.[7]

In the present case, the facts demonstrate that the plaintiff clearly met the requirements for benefits related to heart disease pursuant to § 7-433c. Specifically, it is undisputed that his preemployment physical revealed no evidence of hypertension or heart disease. It is further undisputed that he suffered a myocardial infarction that was caused by heart disease and resulted in a surgical procedure, hospitalization and continuing disability. He filed his claim for benefits related to the heart disease within four days of its manifestation. Accordingly, we conclude that the board properly affirmed the commissioner's decision granting the plaintiff benefits pursuant to § 7-433c related to heart disease.

The defendant also claims on appeal that the commissioner improperly denied its motion to correct in which the defendant sought to correct errors that it claimed were inconsistent with the commissioner's rules on proximate causation. The commissioner denied the motion to correct on the ground that § 7-433c does not require a claimant to prove a causal connection between heart disease and hypertension and his employment. As explained previously in this opinion, this court has long recognized that "the special compensation, or the outright bonus, of § 7-433c is that the claimant is not required to prove that the heart disease is causally connected to [his or her] employment, which he [or she] would ordinarily have to establish in order to receive benefits pursuant to the Workers' Compensation Act." (Internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 752, 945 A.2d 936 (2008). Accordingly, any alleged error in the commissioner's decision relating to the rules of proximate causation was not relevant to the issues on appeal to the board and, therefore, the board properly affirmed the commissioner's denial of the motion to correct.

The decision of the Workers' Compensation Review Board is affirmed.

In this opinion the other justices concurred.

[1] We note that Connecticut Interlocal Risk Management Agency, the heart and hypertension claims administrator for the New Haven Police Department is a defendant in the present case and joined in this appeal. In the interest of clarity, we refer to the New Haven Police Department as the defendant throughout this opinion.

[2] The defendant appealed from the decision of the board to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] General Statutes § 7-433c (a) provides: "Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, 'municipal employer' has the same meaning as provided in section 7-467."

Although § 7-433c (a) was the subject of technical amendments in 2014; see Public Acts 2014, No. 14-122, § 72; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[4] We note at the outset that § 7-433c (b) provides that "those persons who began employment on or after July 1, 1996, shall not be eligible for any benefits pursuant to this section." Therefore, the applicability of § 7-433c (a) is limited to those who began employment before July 1, 1996. In the present case, it is undisputed that the plaintiff was hired on June 3, 1996.

[5] The plaintiff cross appealed to the board from the decision of the commissioner denying his claim for benefits related to hypertension. The board affirmed the decision of the commissioner denying the plaintiff's claim for benefits related to hypertension as untimely, and the plaintiff has not appealed from that decision of the board. Accordingly, the plaintiff's claim for benefits related to hypertension is not at issue in this appeal.

[6] We note that both parties cite to previous decisions of the board in support of their positions. In particular, the plaintiff asserts that the board's interpretation of § 7-433c as treating hypertension and heart disease as separate medical conditions is a time-tested approach. "This court repeatedly has observed that an agency's reasonable interpretation of an ambiguous statute is entitled to deference only when that interpretation has been subjected to judicial review or the agency interpretation is both reasonable and time-tested." *Vincent* v. *New Haven*, 285 Conn. 778, 784 n.8, 941 A.2d 932 (2008); see also *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 163–66, 931 A.2d 890 (2007). It is undisputed that whether a claim for benefits under § 7-433c related to heart disease is barred because a claimant failed to file a timely claim for benefits for previously diagnosed hypertension has not been the subject of judicial review. Although it is true that, since its decision in *Mayer* v. *East Haven*, No. 4620, CRB-3-03-2 (March

3, 2004), the board has interpreted § 7-433c as treating hypertension and heart disease as separate medical conditions, *Mayer* was not decided until 2004. "To satisfy the time-tested requirement of the rule according deference to an agency's interpretation of a statute, that interpretation must formally have been articulated and applied 'over a long period of time . . . .' *State Medical Society* v. *Board of Examiners in Podiatry*, 208 Conn. 709, 719, 546 A.2d 830 (1988); see also *Hartford* v. *Hartford Municipal Employees Assn.*, 259 Conn. 251, 262, 788 A.2d 60 (2002) (deference accorded agency's reasonable interpretation of statute only when agency has followed that interpretation 'for an extended period of time')." *Vincent* v. *New Haven*, supra, 784 n.8. Because *Mayer* is a relatively recent decision, we cannot say that the board's interpretation of § 7-433c is sufficiently long-standing to warrant judicial deference, especially in view of the fact that the board has applied this interpretation only in two previous cases. See *Christopher R.* v. *Commissioner of Mental Retardation*, 277 Conn. 594, 603 n.9, 893 A.2d 431 (2006) (two "isolated" agency decisions over twenty-three year period was not "a [time-tested] interpretation"); cf. *Connecticut Assn. of Not-for-Profit Providers for the Aging* v. *Dept. of Social Services*, 244 Conn. 378, 390 n.18, 709 A.2d 1116 (1998) (observing that agency interpretation of "[f]our years hardly constitutes a 'time-tested' agency interpretation"). Moreover, because we conclude that § 7-433c is not ambiguous, the board's interpretation would not be entitled to deference in any event. See *State Medical Society* v. *Board of Examiners in Podiatry*, supra, 719 (rule of deference applies only when agency "has consistently followed its construction over a long period of time, the statutory language is ambiguous, and the agency's interpretation is reasonable"); see also *Vincent* v. *New Haven*, supra, 784 n.8.

[7] The defendant also cites to *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 591–92, 986 A.2d 1023 (2010), and *Hernandez* v. *Gerber Group*, 222 Conn. 78, 86, 608 A.2d 87 (1992), for the proposition that if there is a causal relationship between one injury and another, they are considered to be one event for the purposes of compensation pursuant to the Workers' Compensation Act. As we have explained previously in this opinion, § 7-433c is different from the Workers' Compensation Act because it does not require any proof of causation. Accordingly, we conclude that *Marandino* and *Hernandez* are inapplicable to our resolution of the plaintiff's claim under § 7-433c.