******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

THOMAS J. BROCUGLIO, SR. *v.* THOMPSONVILLE
FIRE DISTRICT #2
(AC 41237)

DiPentima, C. J., and Lavine and Harper, Js.

*Syllabus*

The defendant employer appealed to this court from the decision of the
Compensation Review Board, which affirmed the decision of the Work-
ers' Compensation Commissioner that the plaintiff employee's claim for
benefits as a result of heart disease was compensable under the Heart
and Hypertension Act (§ 7-433c). The defendant claimed that the board
improperly affirmed the commissioner's award because the plaintiff's
notice of claim, which was for mitral valve replacement and coronary
artery disease, was not timely filed pursuant to statute (§ 31-294c [a])
and § 7-433c (a) does not allow a claimant to file more than one claim
for heart disease. The plaintiff had been informed by his cardiologist
almost thirteen years prior to the claim at issue that he suffered from
pericarditis, a form of heart disease. The plaintiff did not file a notice
of claim, as required by § 31-294c (a), within one year of when he was
informed that he had pericarditis. The commissioner determined, on
the basis of a report by a cardiologist who had examined the plaintiff, that
mitral valve replacement and coronary artery disease was a condition
separate and distinct from the plaintiff's pericarditis. The commissioner,
thus, concluded that the mitral valve replacement and coronary artery
disease were new injuries, and that the plaintiff's failure to file a timely
notice of claim relative to the pericarditis did not bar his subsequent
claim for mitral valve replacement and coronary artery disease. *Held*
that the board improperly affirmed the commissioner's award, as the
commissioner lacked jurisdiction to consider the plaintiff's claim for
benefits pursuant to § 7-433c because he failed to file the notice of claim
required by § 31-294c (a) within one year of when he was informed by
his cardiologist that he suffered from pericarditis; although a variety of
maladies may be diagnosed as heart disease, as the commissioner found
here, § 7-433c makes no provision for the filing of multiple claims for
different forms of heart disease, and a claimant who forgoes the filing
of a notice of claim within one year of being informed by a medical
professional that he or she has a heart disease, and who later files a
claim for a different heart disease, is precluded from receiving benefits
under § 7-433c.

Argued March 6—officially released June 25, 2019

*Procedural History*

Appeal from the decision of the Workers' Compensa-
tion Commissioner for the First District finding that
the plaintiff had sustained a compensable injury and
awarding, inter alia, temporary total disability benefits;
thereafter, the commissioner denied the defendant's
motion to correct and issued an articulation of her
decision; subsequently, the defendant appealed to the
Compensation Review Board, which affirmed the com-
missioner's decision, and the defendant appealed to this
court. *Reversed; decision directed.*

*Joseph W. McQuade*, for the appellant (defendant).

*Eric W. Chester*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. The defendant, the Thompsonville Fire District #2, appeals from the decision of the Compensation Review Board (board) affirming the finding and award (award) of the Workers' Compensation Commissioner for the First District (commissioner) with respect to the 2013 claim filed by the plaintiff, Thomas J. Brocuglio, Sr., pursuant to General Statutes § 7-433c, "commonly referred to as the Heart and Hypertension Act."[1] The defendant claims that the board improperly affirmed the commissioner's award because the plaintiff's heart disease claim was not timely filed pursuant to General Statutes § 31-294c (a), and § 7-433c (a) does not allow a claimant to file more than one claim for heart disease. We conclude that because the plaintiff failed to file a claim in 2000 when he was first informed by a medical professional that he had heart disease, the claim he filed for heart disease in 2013 is jurisdictionally barred. We, therefore, reverse the decision of the board.

The present appeal may be summarized as follows. The plaintiff, a qualified firefighter employed by the defendant, filed a claim for heart disease under § 7-433c (a)[2] following surgery for heart disease that took place in 2013. Prior to the heart surgery that is the subject of the present appeal, in 2000, the plaintiff was hospitalized, treated, and informed that he suffered from heart disease in the form of pericarditis. The commissioner determined that the plaintiff did not file a § 7-433c claim for heart disease within one year of being informed that he had pericarditis. The defendant, therefore, argues that because the plaintiff did not file a claim for pericarditis within one year of being informed of the heart disease in 2000, the claim for heart disease he filed in 2013 is jurisdictionally barred by § 31-294c (a).[3] On the basis of our plenary review, we conclude that because the plaintiff did not timely file a claim for heart disease in 2000, he failed to meet the jurisdictional prerequisite entitling him to an award for his 2013 claim for heart disease.

The following relevant facts were set out in the commissioner's award issued subsequent to a formal hearing that she held on October 1 and 29, 2015. The plaintiff has been a full-time firefighter employed by the defendant since September 3, 1987. Prior to his employment with the defendant, the plaintiff passed a preemployment physical examination that was a condition of his employment. On or about June 19, 2013, the plaintiff felt weak, tired, out of breath, and had difficulty walking up stairs. He consulted his primary care physician, Melissa A. Hession, who later issued a report stating that "[o]n June 11, 2013, [the plaintiff] presented to my office with a lingering cough and new heart murmur on exam. He was sent for an echocardiogram on June 19, 2013, which revealed severe mitral regurgitation with a flail posterior mitral valve leaflet. He subse-

quently underwent emergency surgery to repair the damaged heart valve."

When William Martinez, a cardiothoracic surgeon, performed surgery on the plaintiff on July 3, 2013, he replaced the mitral valve and performed a single coronary bypass procedure. The plaintiff was discharged from Saint Francis Hospital and Medical Center in Hartford and next treated at the Hospital for Special Care in New Britain for postsurgical care from July 15 to 31, 2013. John I. Baron, the plaintiff's cardiologist, treated the plaintiff for postoperative complications related to the surgery and diagnosed the plaintiff as totally disabled until April 21, 2014, when he released the plaintiff to return to work. Despite Baron's having released the plaintiff to work, the defendant required the plaintiff to be seen by its own physician for a " 'fitness for duty examination.' "

The commissioner also found that the plaintiff completed a form 30C[4] and delivered it to the defendant on September 10, 2013, the date the defendant first was notified of the plaintiff's heart disease claim. The defendant filed two form 43s denying the plaintiff's claim.[5] Although the plaintiff claimed that the defendant failed to timely file form 43, the commissioner found that the defendant had timely contested the plaintiff's 2013 claim.[6]

The commissioner found that the plaintiff, in discussing his medical history at the formal hearing, testified that he had been diagnosed with "constrictive pericarditis"[7] in November, 2000, for which he was treated by James B. Kirchhoffer, a cardiologist. According to the plaintiff, he was out of work for a few days, but he could not remember how many days. He was released to return to full-duty work, but before he was able to return to work, the defendant required that he undergo a fitness for duty examination. The plaintiff used his sick days to cover the time he was out of work. The plaintiff sought a second opinion about his pericarditis and treatment from Baron in September, 2001.[8] Baron was still the plaintiff's cardiologist at the time of the formal hearing.

The plaintiff testified that he delivered a form 30C for the pericarditis to the defendant's then fire chief, but he could not recall the chief's name. He did not request a hearing on his alleged pericarditis claim. He further testified that he never discussed it again with the chief, and that he did not keep a copy of the form 30C for his records. The commissioner found that there is no record in the workers' compensation system of a claim filed by the plaintiff for an injury to his heart in or about November, 2000.[9] Acting Fire Chief William Provencher testified that he had searched the defendant's personnel and workers' compensation records, but that he could find no form 30C for pericarditis filed by the plaintiff. The commissioner found that the

plaintiff did not testify credibly or persuasively that he had filed a form 30C for pericarditis in 2000.

Kevin J. Tally, a cardiologist, examined the plaintiff on behalf of the commissioner on January 21, 2015, and submitted a report. Tally diagnosed the plaintiff with a distant history of pericarditis, with one recurrence, healed and of historical interest only as of 2013; acute posterior leaflet mitral valve prolapse with resultant pulmonary edema status postmitral valve replacement with bioprosthesis, July 3, 2013, currently with normal valve function; nonischemic cardiomyopathy postopen-heart surgery, "LVEF of 45 percent," currently out of congestive heart; postpericardiotomy syndrome, resolved; sternal wound pain, chronic; and coronary artery disease, among other heart issues.

Tally also wrote: "The cause of [the plaintiff's] mitral valve deterioration is presumably on the basis of an inherent weakness in the mitral valve. It is somewhat spontaneous and unpredictable. The patient's single vessel moderate coronary artery disease has a causative [input:] his hypertension, occasional smoking, obesity and lack of regular exercise. The distant history of pericarditis is most likely from a viral illness of some sort. This pericarditis represents a *completely separate episode of heart disease*." (Emphasis added.) On the basis of Tally's report, the commissioner found that the plaintiff "suffered a completely different type of heart disease in 2013. The mitral valve replacement and the coronary artery bypass are different medical problems from the distant and resolved pericarditis of 2000." (Internal quotation marks omitted.)

At the hearing, the defendant's counsel argued that § 7-433c grants benefits for either hypertension or heart disease. In 2000, the plaintiff suffered a distinct heart disease, pericarditis, for which he did not file a claim within one year of November, 2000. The plaintiff, therefore, cannot file a claim for another type of heart disease, in this case, mitral valve replacement and coronary artery disease, in 2013. The defendant argued that the plaintiff had one opportunity to make a claim for heart disease, which he failed to do in 2000, and, thus, the plaintiff's attempt to make a claim for a 2013 heart disease was jurisdictionally barred.

On the basis of her findings, the commissioner concluded that Tally's report of January 21, 2015, was persuasive, in particular his opinion that pericarditis was a completely separate episode of heart disease and that the plaintiff had not suffered from pericarditis in several years. Hypertension and heart disease are two separate and distinct conditions. According to Tally, pericarditis, and mitral valve replacement and coronary artery disease, are separate and distinct conditions. The commissioner found, therefore, that the plaintiff had suffered an injury to his heart and had made a claim for benefits pursuant to § 7-433c. The commissioner ultimately con-

cluded that the plaintiff's claim for benefits due to his heart injury of June 19, 2013, is compensable pursuant to § 7-433c.

The defendant filed a motion to correct, seeking to have the commissioner add a conclusion that the plaintiff was told by his cardiologist that he had heart disease in the form of pericarditis in or around November, 2000. It also requested that the commissioner delete certain of her findings and substitute, "I find that the [plaintiff's] claim for workers' compensation benefits due to his injury of June 19, 2013, is time barred under § 31-294c because he did not file a claim for compensation within one year of being told that he had heart disease in November, 2000. The [plaintiff's] claim is dismissed." The commissioner denied the motion to correct.

On June 10, 2016, the defendant filed a motion for articulation, seeking to have the commissioner articulate the authority for the proposition that § 7-433c, as interpreted by the board and Connecticut courts, permits a claimant to recover for multiple diagnoses of heart disease. The defendant pointed out that the commissioner found that the plaintiff had suffered from pericarditis for which he was treated by two cardiologists, missed time from work, was required to take medication, and underwent a fitness for duty examination. In addition, the defendant noted that the commissioner credited Tally's opinion that pericarditis was an episode of heart disease that is separate from mitral valve replacement and coronary artery disease. The defendant further noted that a claimant may file separate claims for hypertension and for heart disease, but neither party cited any authority for the proposition that § 7-433c, as construed by the board or Connecticut courts, permits a claimant to recover for multiple instances or diagnoses of heart disease, even different kinds of heart disease. The defendant asserted that the commissioner's award failed to address the defendant's central argument that the plaintiff's failure to comply with § 31-294c (a) by filing a claim in or around 2000 precluded a heart disease claim in 2013.

In her articulation, the commissioner stated in relevant part: "In *McNerney* v. *New Haven*, [15 Conn. Workers' Comp. Rev. Op. 330, 2098 CRB-3-94-7 (June 25, 1996)],[10] the [board] affirmed the . . . commissioner's finding that [the plaintiff], having been cured of his hypertension diagnosed in 1975, was entitled to file a new claim for hypertension in 1991. The . . . commissioner had found [that] the claimant had cured his 1975 hypertension through diet and lifestyle changes. The . . . commissioner further found the 1991 hypertension to be a new injury and not a recurrence. . . .

"[In the present case, the commissioner] found that [the plaintiff's] mitral valve replacement and coronary artery bypass were new injuries based on . . . Tally's report. Therefore, the fact that the [plaintiff] had not

filed a timely claim for his distant and resolved and healed pericarditis did not bar a new claim for mitral valve prolapse and coronary artery disease." (Internal quotation marks omitted.)

Thereafter, the defendant appealed to the board, which affirmed the commissioner's finding in a decision dated December 21, 2017. The board stated that the gravamen of the defendant's appeal was the commissioner's finding that the plaintiff's claim was timely pursuant to § 31-294c (a), as the plaintiff's prior episode of pericarditis mandated that he seek heart benefits at that time and that his failure to do so rendered his current claim of mitral valve failure jurisdictionally invalid. The plaintiff responded that the commissioner's award is predicated on probative medical evidence and is in accord with our Supreme Court's decision in *Holston* v. *New Haven Police Dept.*, 323 Conn. 607, 149 A.3d 165 (2016). The board found the plaintiff's position more persuasive and, therefore, affirmed the commissioner's award.

The board recognized the defendant's claim that *McNerney* is no longer good law subsequent to our Supreme Court's decision in *Ciarlelli* v. *Hamden*, 299 Conn. 265, 296–98, 8 A.3d 1093 (2010). The board, however, concluded that *Ciarlelli* and *Malchik* v. *Division of Criminal Justice*, 266 Conn. 728, 733, 835 A.2d 940 (2003) (determining whether claimant presented sufficient evidence that his coronary artery disease was occupational disease), a case on which the plaintiff relied, were distinguishable from the present case. The board concluded that under *Holston*, the commissioner properly concluded that the plaintiff's 2013 claim for heart disease was timely filed because the mitral valve ailment was separate from and unrelated to the plaintiff's prior pericarditis heart disease. More specifically, the board stated that it is the role of the "commissioner to determine whether an ailment is or is not 'heart disease.' We extend this reasoning to the role of a trial commissioner in determining whether a 'new' heart disease is similar to or different from a prior heart disease. If the new heart disease can be distinguished from the prior disease, then the holding of *Holston* [v. *New Haven*, supra, 323 Conn. 607], renders the subsequent claim jurisdictionally valid." This is because, the board reasoned, the undisputed medical evidence supported the commissioner's determination that the mitral valve ailment was a new injury. The defendant appealed from the board's decision affirming the commissioner's finding that the plaintiff's § 7-433c (a) claim was timely filed in 2013.

The question presented in the present case is whether the plaintiff failed to meet the jurisdictional prerequisite for his 2013 claim for heart disease because he failed to file a claim within one year of being told by a medical professional that he suffered from pericarditis in 2000,

which is unrelated to the mitral valve failure and coronary heart disease he suffered in 2013. Our research has not disclosed a case that has decided the question, and the parties have not brought any case concerning multiple instances or different forms of heart disease to our attention.[11] "Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Internal quotation marks omitted.) *Dowling* v. *Slotnik*, 244 Conn. 781, 798, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998).

Our Supreme Court has stated that an "agency's reasonable interpretation of an ambiguous statute is entitled to deference only when that interpretation has been subjected to judicial review or the agency interpretation is both reasonable and time-tested." *Vincent* v. *New Haven*, 285 Conn. 778, 784 n.8, 941 A.2d 932 (2008). "To satisfy the time-tested requirement of the rule according deference to an agency's interpretation of a statute, that interpretation must formally have been articulated and applied over a long period of time . . . ." (Internal quotation marks omitted.) Id. Our Supreme Court has concluded that "§ 7-433c is not ambiguous, [and] the board's interpretation would not be entitled to deference in any event." *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 612 n.6. We, therefore, undertake a plenary review of the defendant's claim.

We, of course, are "mindful of the principles underlying Connecticut practice in [workers'] compensation cases: that the legislation is remedial in nature . . . and that it should be broadly construed to accomplish its humanitarian purpose." (Citation omitted; internal quotation marks omitted.) *Suprenant* v. *New Britain*, 28 Conn. App. 754, 759, 611 A.2d 941 (1992). Nonetheless, we also are aware that our construction of a statute is constrained by General Statutes § 1-2z and that we may not read language into a statute that is not there to reach a particular result. See *State* v. *George J.*, 280 Conn. 551, 570, 910 A.2d 931 (2006) ("As a general matter, this court does not read language into a statute. . . . [W]e are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained." [Citation omitted; internal quotation marks omitted.]), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007). A review of the historical underpinnings of § 7-433c, therefore, is warranted.

"The statute concerning heart disease and hypertension was originally drafted as part of the Workers' Compensation Act [act] [General Statutes § 31-275 et seq.] and provided police officers and firefighters with a rebuttable presumption that heart disease and hypertension were causally connected to their occupations.

. . . In 1969, this rebuttable presumption was made conclusive and the statute was soon declared unconstitutional . . . . In response to that problem, § 7-433c was enacted in its present form in 1977 as legislation separate and distinct from the [act].

"[Section] 7-433c gives a special compensation to those who qualify, in the sense that they have no burden of proof that the disease resulted from the employee's occupation or that it occurred in the course of employment. The mere fact that the employee has hypertension or heart disease and dies or is disabled because of it is all that is necessary. The employee does not need to prove that his heart disease is causally connected to his employment. . . . In order to collect the benefits provided by § 7-433c, a claimant need show only that he or she is a uniformed member of a paid fire department or a regular member of a paid police department, whose preemployment physical examination revealed no evidence of hypertension or heart disease, who now suffers a condition or an impairment of health caused by hypertension or heart disease that has resulted in death or disability, and has suffered a resultant economic loss. . . . [O]nce the conditions of § 7-433c are met, benefits must be paid by the municipality in accordance with the [act]. . . .

"Nevertheless, [our Supreme Court] has stated on many occasions that [t]he procedure for determining recovery under § 7-433c is the same as that outlined in chapter 568 [of the act], presumably because the legislature saw fit to limit the procedural avenue for bringing claims under § 7-433c to that already existing under chapter 568 rather than require the duplication of the administrative machinery available [under the act] and further burden the courts and the municipalities [with additional litigation from claims by (firefighters) and (police officers) pursuant to this legislation].

"[A] claimant for workers' compensation benefits must provide both notice of injury; General Statutes § 31-294b . . . and notice of a claim. General Statutes § 31-294c . . . . *Funaioli* v. *New London*, 52 Conn. App. 194, 195, 726 A.2d 626 (1999) (first report of injury together with letter from claimant's lawyer stating that claimant not requesting hearing at this time sufficient to satisfy notice of claim requirement of § 31-294c). [T]he written notice intended is one which will reasonably inform the employer that the employee is claiming or proposes to claim compensation under the [act]. . . . The purpose of § 31-294[12] [notice of injury and of claim for compensation], in particular, is to alert the employer to the fact that a person has sustained an injury that may be compensable . . . and that such person is claiming or proposes to claim compensation under the [a]ct." (Citations omitted; footnotes added and footnotes omitted; internal quotation marks omitted.) *Pearce* v. *New Haven*, 76 Conn. App. 441, 446–49,

819 A.2d 878 (overruled in part on other grounds by *Ciarlelli* v. *Hamden*, 299 Conn. 265, 296, 8 A.3d 1093 [2010]), cert. denied, 264 Conn. 913, 826 A.2d 1155 (2003). Our Supreme Court has explained "that the one year limitation period for claims under § 7-433c begins to run only when an employee is informed by a medical professional that he or she has been diagnosed with hypertension [or heart disease]. In many respects, this simply represents a return to the standard that the board applied prior to *Pearce*, which, in our view, more faithfully adhered to the statutory definition of accidental injury in view of the fact that, as a general matter, a formal diagnosis of hypertension [or heart disease] can be definitely located in time and place." *Ciarlelli* v. *Hamden*, supra, 299 Conn. 300–301.

"Thus, § 7-433c directs claimants to the provisions of the [act] to determine how to proceed with a claim for benefits. Since § 31-294[13] states that [n]o proceedings for compensation . . . shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident . . . we conclude that compliance with this section is also a prerequisite to entitlement to benefits under § 7-433c. . . .

"Giving notice of the claim and the time of filing are essential to maintaining a right of action against an employer. Where a statutory right of action sets a time within which that right must be carried out, a limitation on the action is created and must be strictly enforced. . . . Not being merely a procedural matter, the doctrine of waiver upon which the claimant relies, cannot avail, since jurisdiction cannot be waived, nor can it be conferred by agreement." (Citations omitted; footnote added; internal quotation marks omitted.) *Cuccuro* v. *West Haven*, 6 Conn. App. 265, 267–68, 505 A.2d 1, cert. denied, 199 Conn. 804, 508 A.2d 31 (1986).

"Although a claimant need not prove that his heart disease is causally connected to his employment in order to qualify for benefits pursuant to § 7-433c, he must prove that he satisfies the jurisdictional threshold set forth in § 31-294c (a), which requires that a claimant provide his employer a written notice of claim for compensation . . . within one year from the date of the accident . . . which caused the personal injury . . . ." (Internal quotation marks omitted.) *Carter* v. *Clinton*, 304 Conn. 571, 578–79, 41 A.3d 296 (2012). "[C]ompliance with [§ 31-294c] is essential to maintaining a claim for compensation under chapter 568 and therefore under . . . § 7-433c . . . because timely notice is a jurisdictional requirement that cannot be waived . . . ." (Internal quotation marks omitted.) Id., 579.

First, we set forth the standard of review applicable to workers' compensation appeals. "The principles that govern our standard of review in workers' compensa-

tion appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and [the] board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Footnote omitted; internal quotation marks omitted.) *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 611–13.

"[Our Supreme Court has] stated: [T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Pearce* v. *New Haven*, supra, 76 Conn. App. 445.

"It matters not that the basic facts from which the [commissioner] draws this inference are undisputed rather than controverted. . . . It is likewise immaterial that the facts permit the drawing of diverse inferences. The [commissioner] alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court." (Internal quotation marks omitted.) Id., 445–46.

The defendant's claim raises a question of statutory construction. "When interpreting the statutory provisions at issue in the present case, we are mindful of the proposition that all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees. . . . This proposition applies as well to the provisions of [§] 7-433c . . . because the measurement of the benefits to which a § 7-433c claimant is entitled is identical to the benefits that may be awarded to a [claimant] under . . . [the act]. . . . We also recognize, however, that the filing of a timely notice of claim is a condition precedent to liability and a jurisdictional requirement that cannot be waived." (Citation omitted; internal quotation marks omitted.) *Ciarlelli* v. *Hamden*, supra, 299 Conn. 277–78.

"When construing a statute, [o]ur fundamental objec-

tive is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plan and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Footnote omitted; internal quotation marks omitted.) *Vincent* v. *New Haven*, supra, 285 Conn. 784–85.

On appeal, the defendant claims that the plaintiff is jurisdictionally barred from submitting a claim for heart disease in 2013 because he failed to file a § 7-433c claim for pericarditis in 2000, when he was first told by a medical professional that he had heart disease. See *Ciarlelli* v. *Hamden*, supra, 299 Conn. 298–99. The principal facts are not in dispute: the plaintiff suffered pericarditis in 2000; pericarditis is a form of heart disease; the plaintiff was informed by his cardiologist that he had pericarditis in 2000; the plaintiff continued to be under the care of a cardiologist until he underwent heart surgery in 2013; in 2013 the plaintiff was informed that he had a mitral valve failure and coronary artery disease; mitral valve failure and coronary artery disease are diseases of the heart; pericarditis, mitral valve failure, and coronary artery disease are distinct forms of heart disease; there is no record that the plaintiff filed a claim for heart disease in 2000; he did file a claim for heart disease in 2013.

The defendant's claim is controlled by § 7-433c (a), which provides in relevant part that "in the event a uniformed member of a paid municipal fire department . . . who . . . passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he . . . shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 . . . ."

The plain language of § 7-433c (a); see footnote 2 of this opinion; "demonstrates that a uniformed member

of a paid municipal fire department . . . is entitled to benefits under the statute when the officer meets the following requirements: (1) has passed a preemployment physical; (2) the preemployment physical failed to reveal any evidence of . . . heart disease; (3) suffers either off duty or on duty any condition or impairment of health; (4) the condition or impairment of health was caused by . . . heart disease; and (5) the condition or impairment results in his death or his temporary or permanent, total or partial disability. The statute contains no other requirements to qualify for its benefits." *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 616–17.

"[B]ecause . . . § 7-433c (a) does not set forth a limitation period for filing a claim but provides for the administration of benefits in the same amount and the same manner as that provided under [the act] if such death or disability was caused by a personal injury which arose out of and in the course of his employment, the one year limitation period of . . . 31-294c (a) governs claims filed under § 7-433c." (Internal quotation marks omitted.) *Ciarlelli* v. *Hamden*, supra, 299 Conn. 278.

In *Ciarlelli*, our Supreme Court defined the rule to determine when a uniformed municipal firefighter's timely claim for hypertension or heart disease must be filed. Id., 265. Because § 7-433c (a) "provides for an award of benefits to an otherwise eligible claimant who suffers . . . any condition or impairment of health caused by hypertension or heart disease resulting in his death or his . . . disability, it stands to reason that a formal diagnosis of hypertension or heart disease, communicated to an employee by his or her physician constitutes the injury that triggers the running of the limitation period of § 31-294c. Indeed, under § 7-433c, a claimant may recover benefits for hypertension only if he suffers from that condition; a claimant is not entitled to benefits merely because he exhibits symptoms consistent with hypertension, such as elevated blood pressure, from time to time. Furthermore, requiring that an employee file a notice of claim for hypertension benefits only *after he has been informed by a medical professional* that he is suffering from that condition, and not merely from its symptoms, is consistent with the principle that, as a remedial statute . . . § 7-433c must be liberally construed in favor of the claimant." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 298–99. We conclude that, given our Supreme Court's construction of the statute, including the phrase "hypertension or heart disease," the notice provision pertains to a diagnosis of heart disease as well as to a diagnosis of hypertension.

In the present case, the defendant claims that because the plaintiff was diagnosed with pericarditis in 2000 and did not file a form 30C at that time when his cardiol-

ogist told him that he had heart disease, his 2013 form 30C filing for heart disease was untimely and the commissioner lacked jurisdiction to consider the claim. The plaintiff does not dispute that he was informed by a cardiologist in 2000 that he suffered from pericarditis, that he was unable to work for a period of time, was required to take medicine for the condition, and was required to undergo a physical examination to determine whether he was fit to return to work. He also acknowledges that he had a recurrence of pericarditis in 2001 and continued to take 800 milligrams of ibuprofen for a number of years. The plaintiff's argument is not that he did not suffer from heart disease in 2000, but rather that because Tally testified, and the commissioner found, that his pericarditis had healed, and that pericarditis and mitral valve failure and coronary artery disease are separate and distinct heart diseases, he should be permitted to file a claim for the heart disease with which he was diagnosed in 2013. We agree with the defendant. Pursuant to *Ciarlelli*, the plaintiff was required to file a form 30c notice of claim under § 7-433c within one year of being advised by his cardiologist that he suffered from pericarditis.

The defendant also argues that the language of § 7-433c is clear and permits a municipal firefighter to file only one claim for heart disease and only one claim for hypertension, if any.[14] Although the commissioner found, on the basis of Tally's testimony, that pericarditis and mitral valve failure and coronary artery disease are separate and distinct forms of heart disease, a fact the defendant does not dispute, the defendant argues that in order for the plaintiff to receive benefits for heart disease, he was required to file a notice of claim within one year of first being told he had heart disease, i.e., pericarditis. There is no dispute that the plaintiff was informed that he had pericarditis in 2000 and was under the care of a cardiologist thereafter. Although the plaintiff testified that he filed a form 30C in 2000, the commissioner found that the testimony was not credible.[15]

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply." (Citation omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431, 692 A.2d 742 (1997). "Where the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intent of the legislature and there is no need for statutory construction or a review of the legislative history." (Internal quotation marks omitted.) *Haesche* v. *Kissner*, 229 Conn. 213, 223, 640 A.2d 89 (1994). Our Supreme Court has determined that § 7-433c (a) is not ambiguous. This court, therefore, is not free to consider extratextual evidence of the meaning of the statute. See

General Statutes § 1-2z. "Where statutory language is clearly expressed, as here, courts must apply the legislative enactment according to the plain terms and cannot read into the terms of a statute something which manifestly is not there in order to reach what the court thinks would be a just result." (Internal quotation marks omitted.) *Hammond* v. *Commissioner of Correction*, 54 Conn. App. 11, 17–18, 734 A.2d 571 (1999), aff'd, 259 Conn. 855, 792 A.2d 774 (2002).

Tally's report states that pericarditis, and mitral valve failure and coronary artery disease, are separate and distinct forms of heart disease. The defendant does not dispute his expert opinion. It argues that a claimant seeking heart disease benefits is required to file a claim for the first diagnosis of heart disease. We acknowledge that there are a variety of maladies that may be diagnosed as heart disease, but the statute does not take that fact into account and makes no provision for the filing of multiple claims for different forms of heart disease a firefighter may suffer during his or her term of employment.

Our Supreme Court has stated that "[t]he plain language of § 7-433c demonstrates that a uniformed member of a paid municipal fire department . . . is entitled to benefits under the statute when the officer meets the following requirements: (1) has passed a preemployment physical; (2) the preemployment physical failed to reveal any evidence of hypertension or heart disease; (3) suffers either off duty or on duty any condition or impairment of health; (4) the condition or impairment of health was caused by hypertension or heart disease; and (5) the condition or impairment results in his death or his temporary or permanent, total or partial disability. The statute contains no other requirements to qualify for its benefits." *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 616–17. Requirements (3) and (4) are controlling of the defendant's claim. The condition or impairment of health is written in the singular, not the plural. It contains no modifier of heart disease such as first instance of or second form of heart disease. The statute does not include language or suggest that the firefighter may file multiple claims for heart disease or claims for different forms of heart disease.

The plaintiff argues on the basis of *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 615, that because our Supreme Court has determined that hypertension and heart disease are separate and distinct forms of disease, the separate and distinct language analysis should apply to all forms of heart disease, as well as to the difference between hypertension and heart disease. We disagree. In *Holston*, a municipal police department appealed from the award of heart disease benefits, claiming that the commissioner had improperly determined that the police officer's "hypertension and heart disease were separate diseases, each with its own one

year limitation period for filing a claim for benefits." Id., 610. In construing the statute, our Supreme Court stated that § 7-433c "uses the phrase hypertension *or* heart disease repeatedly. We have held that the use of the word *or* in a statute indicates a clear legislative intent of separability. . . . Thus because § 7-433c is written in the disjunctive, we conclude that a plaintiff can file a claim for benefits related to either hypertension or heart disease. Furthermore, the use of the disjunctive term *or* in § 7-433c indicates that the legislature intended for hypertension and heart disease to be treated as two separate diseases for the purposes of § 7-433c." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 615-16. There is no language in §7-433c or *Holston* or *Ciarlelli* that permits a paid municipal firefighter to file more than one claim for heart disease.

In conclusion, a claimant who forgoes filing a claim within one year of being informed by a medical professional that he or she has a heart disease and who later files a claim for a different heart disease is precluded from receiving benefits under § 7-433c. We, therefore, reverse the decision of the board and remand the case to the board with direction to remand the case to the commissioner with direction to dismiss the plaintiff's claim. We recognize the seeming harshness of our decision and the humanitarian purpose of the statute, but we are constrained by the language of the statute, the dictates of § 1-2z, and the decisions of our Supreme Court.[16]

For the foregoing reasons, we conclude that the commissioner lacked jurisdiction to consider the plaintiff's 2013 claim for § 7-433c benefits for heart disease. We also conclude that the board improperly affirmed the commissioner's award.

The decision of the Compensation Review Board is reversed and the case is remanded to the board with direction to remand the case to the Workers' Compensation Commissioner with direction to dismiss the plaintiff's claim.

In this opinion the other judges concurred.

[1] See *Pearce* v. *New Haven*, 76 Conn. App. 441, 443–44, 819 A.2d 878 (overruled in part by *Ciarlelli* v. *Hamden*, 299 Conn. 265, 296, 8 A.3d 1093 [2010]), cert. denied, 264 Conn. 913, 826 A.2d 1155 (2003).

[2] General Statutes § 7-433c (a) provides in relevant part: "Notwithstanding any provision of chapter 568 [the Workers' Compensation Act, General Statutes § 31-275 et seq.] or any other general statute . . . in the event a uniformed member of a paid municipal fire department . . . who successfully passed a physical examination on entry to such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he . . . shall receive from his municipal employer compensation and medical care in the same amount and the same manner as provided under chapter 568 . . . ."

Section 7-433c (a) was the subject of technical amendments in 2014. See Public Acts 2014, No. 14-122, § 72. Those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current

revision of the statute.

[3] General Statutes § 31-294c (a) provides in relevant part: "No proceedings for compensation under the provisions of this chapter shall be maintained unless a written *notice of claim for compensation is given within one year from the date of the accident* . . . which caused the personal injury . . . ." (Emphasis added.)

[4] A form 30C is the document prescribed by the Workers' Compensation Commission to be used when filing a notice of claim pursuant to the Workers' Compensation Act, General Statutes § 31-275 et seq.

The commissioner found that form 30C contains the following instructions: "This notice must be served upon the commissioner and [e]mployer by personal presentation or by registered or certified mail. For the protection of both parties, the employer should note the date when this notice was received and the claimant should keep a copy of this notice with the date it was served." (Internal quotation marks omitted.)

[5] Form 43 is titled: "Notice to Compensation Commissioner and Employee of Intention to Contest Employee's Right to Compensation Benefits." It is used by an employer to contest liability to pay compensation to an employee for a claimed injury. *Dubrosky* v. *Boehringer Ingelheim Corp.*, 145 Conn. App. 261, 265 n.6, 76 A.3d 657, cert. denied, 310 Conn. 935, 78 A.3d 859 (2013).

[6] The timeliness of the defendant's filing of form 43 is not an issue on appeal.

[7] The pericardium is the "fibroserous membrane . . . covering the heart and beginning of the great vessels." Stedman's Medical Dictionary (28th Ed. 2006) p. 1457. "Constrictive pericarditis" is "postinflammatory thickening and scarring of the membrane producing constriction of the cardiac chambers . . . ." Id.

[8] At the formal hearing, the plaintiff testified in part on cross-examination that he was admitted to the hospital on November 8, 2000, where he remained for a few days and was told that he had constrictive pericarditis; that upon discharge he was not to work until cleared by Kirchhoffer. He was readmitted on June 22, 2001, and discharged with a diagnosis of recurrent pericarditis. He was permitted to return to work after one week. The plaintiff's wife encouraged him to seek a second opinion, and the plaintiff consulted Baron. Baron's records, which were admitted into evidence, state in part: "[The plaintiff], a [forty-two] year old gentleman . . . is seen today in an initial evaluation of chest pain. . . . [C]hest discomfort which . . . [w]as similar to his earlier symptoms related to pericarditis. He has an extensive history dealing with pericarditis, starting in November 2000, for which he was evaluated at Baystate [Medical Center in Springfield, Massachusetts] and treated with nonsteroidals. He had a second flare of the symptoms in the summer [of] 2001 and was treated with Prednisone, Pulse therapy with improvement. He has been treated with a brief course of nonsteroidals after his Pulse treatment." The plaintiff continued to take 800 milligrams of ibuprofen for a number of years.

[9] The commissioner, however, found that the plaintiff filed a form 30C for a work-related knee injury he suffered in 1999, a claim for hypertension on July 14, 2007, and a claim for a back injury on August 11, 2008.

[10] The issue in *McNerney* was whether the claimant timely filed a notice of claim for hypertension. Although the claimant previously had suffered from hypertension, the commissioner found that the claimant's March, 1991 hypertension was a new injury and that his notice of claim filed on May 27, 1993, was timely. In its decision, the board addressed § 31-294c (a), which requires a claimant to file a written notice of claim "within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease . . . ." The board noted that this court had held that a claim for hypertension pursuant to § 7-433c is not presumed to be an occupational disease. See *Zaleta* v. *Fairfield*, 38 Conn. App. 1, 7, 658 A.2d 166, cert. denied, 234 Conn. 917, 661 A.2d 98 (1995). "Without evidence establishing that the claimant's injury is a result of an occupational disease, the one year statute of limitations applies." Id., 6. The board stated that there was no evidence that the claimant's hypertension constituted an occupational disease and remanded the case to the commissioner solely for the purpose of determining whether the claimant's hypertension constituted an occupational disease. See *McNerney* v. *New Haven*, supra, 15 Conn. Workers' Comp. Rev. Op. 333.

*McNerney* was not appealed to this court or otherwise subjected to judicial scrutiny. We, therefore, accord it no precedential value. See *Holston* v. *New Haven Police Dept.*, 323 Conn. 607, 612, 149 A.3d 165 (2016) (traditional deference accorded agency's interpretation of statute unwarranted when

construction of statute has not previously been subject to judicial scrutiny). Moreover, *McNerney* is procedurally and factually distinct from the present appeal.

[11] Throughout the litigation, the parties have cited cases concerning when a claimant with a history of periodic high blood pressure readings should know that he or she has hypertension and must file a claim. See, e.g., *Arborio* v. *Windham Police Dept.*, 103 Conn. App. 172, 928 A.2d 616 (2007), overruled in part on other grounds by *Ciarlelli* v. *Hamden*, 299 Conn. 265, 296, 8 A.3d 1093 (2010); *Pearce* v. *New Haven*, 76 Conn. App. 441, 819 A.2d 878 (overruled in part on other grounds by *Ciarlelli* v. *Hamden*, 299 Conn. 265, 296, 8 A.3d 1093 [2010]), cert. denied, 264 Conn. 913, 826 A.2d 1155 (2003). Our Supreme Court has held that the legislature intended for hypertension and heart disease to be treated as two separate diseases for the purposes of § 7-433c. See *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 616.

[12] We note that § 31-294 was repealed by No. 91-32 of the 1991 Public Acts and that its subject matter was transferred to General Statutes §§ 31-294b and 31-294c.

[13] See footnote 12 of this opinion.

[14] In fact, the plaintiff filed a § 7-433c claim for hypertension in 2007. See footnote 9 of this opinion.

[15] The plaintiff does not dispute the commissioner's finding on appeal.

[16] As the facts of this case demonstrate, there are multiple forms of heart disease. Whether a firefighter or police officer may file a claim for each instance of a distinct and separate heart disease is a public policy question to be determined by the legislature, not this court. It is also for the legislature to determine whether a firefighter may forgo filing a claim for one form of heart disease and later file a claim for a different and perhaps more serious form of heart disease.

———————————————