CHARLES J. BUCKO *v.* CITY OF NEW LONDON ET AL. (5698)

DUPONT, C. J., SPALLONE and NORCOTT, Js.

Argued January 12—decision released March 1, 1988

*Gary S. Starr,* with whom was *Gregory J. Garner,* for the appellant (named defendant).

*Charles L. Flynn,* for the appellee (plaintiff).

SPALLONE, J. The named defendant appeals from the decision of the compensation review division affirming an award in favor of the plaintiff made by the workers' compensation commissioner.[1]

The defendants are the city of New London and its workers' compensation insurer. On appeal, the defendant city claims, in essence, that the award of the commissioner and its affirmation by the compensation review division was inconsistent with the record and findings and constituted a misapplication of the appropriate law. We disagree.

The commissioner made the following findings of fact. On September 26, 1939, the plaintiff underwent a physical examination, required by city ordinance for all persons who were seeking to become supernumerary police officers in the city of New London. The physical examination revealed no evidence of heart disease or hypertension. On November 6, 1940, the plaintiff was appointed a supernumerary police officer and continued as such, on a full-time basis, until May 1, 1945, when he was appointed to the position of patrolman C. On October 6, 1947, he was promoted to patrolman B. Prior to the last appointment, the plaintiff, on September 10, 1947, as a result of another physical examination, was found to have "mild hypertension."

On August 24, 1976, the plaintiff suffered a heart attack and was hospitalized. Subsequently, he filed a

---

[1] This appeal is brought pursuant to General Statutes § 31-301b.

claim under General Statutes § 7-433c.[2] After a hearing was duly held, the issue of liability was found in the plaintiff's favor by the commissioner. The defendants appealed to the compensation review division which affirmed the commissioner's award of benefits to the plaintiff. The named defendant now appeals the decision of the review division to this court.

We see nothing in the record which supports any claim of error in the commissioner's findings and conclusions that the plaintiff qualified for benefits under § 7-433c.

In pertinent part, General Statutes § 7-433c provides that, in order to be eligible for benefits, the claimant must be a "regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease." There is no question that the plaintiff's phys-

[2] "[General Statutes] Sec. 7-433c. BENEFITS FOR POLICEMEN OR FIREMEN DISABLED OR DEAD AS A RESULT OF HYPERTENSION OR HEART DISEASE. In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusual high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation as follows: Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, *in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease,* suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount

ical examination, conducted on September 26, 1939, revealed no hypertension or heart disease. There is similarly no question that, upon his appointment to "temporary C" patrolman in 1945, the plaintiff worked only for the city of New London, was assigned to a regular shift, received regular wages, was entitled to vacation and illness benefits and performed the traditional functions of a full-time police officer. This continued to be true from May of 1945, through the plaintiff's tenure as a patrolman C, after his diagnosis of mild hypertension in September of 1947 and his subsequent promotion to patrolman B one month later, until August of 1976 when the plaintiff suffered a heart attack.

The city claims that the plaintiff's status prior to the medical examination of September 10, 1947, which revealed the mild hypertension, was not that of a "regular member of a paid municipal police depart-

and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive *the same retirement or survivor benefits which would be* paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, the term 'municipal employer' shall have the same meaning and shall be defined as said term is defined in section 7-467." (Emphasis added.)

ment" but rather was a temporary appointment and therefore outside the eligibility requirements of § 7-433c.[3] This argument is not tenable under the facts and circumstances of this case. Nowhere in § 7-433c is there a requirement that any appointment to the regular police force must be a "permanent" appointment. The qualifiers "permanent" or "temporary" are not mentioned in the statute; the only stated prerequisite to the collection of benefits is that the claimant must be a *"regular* member of a paid municipal police department." (Emphasis added.)

The defendants pressed for their construction of the term "regular" as including some sense of permanency to both the commissioner and the compensation review division. The commissioner resolved this dispute in favor of the plaintiff and the review division affirmed that decision. "Our role is to determine whether the review division's decision results 'from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them.' *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 118, 411 A.2d 924 (1979); *Luddie* v. *Foremost Ins. Co.,* 5 Conn. App. 193, 196, 497 A.2d 435 (1985)." *Aurora* v. *Miami Plumbing & Heating Inc.,* 6 Conn. App. 45, 47, 502 A.2d 952 (1986); see also *Grady* v. *St. Mary's Hospital,* 179 Conn. 662, 669, 427 A.2d 842 (1980); *Wheat* v. *Red Star Express Lines,* 156 Conn. 245, 248, 240 A.2d 859 (1968).

---

[3] The crux of the defendants' claim is that the designation of "temporary C" patrolman, to which the plaintiff was appointed in 1945, precludes a finding that the plaintiff had "regular" status. The "temporary C" classification, as found by the commissioner and undisputed by the parties, meant only that a returning World War II veteran had a superior right to the position held by the plaintiff. That designation had no effect on the duties performed by the plaintiff nor did it make his status in some way probationary. The defendants' argument that the plaintiff's susceptibility of being replaced by a returning soldier did not make him a regular police officer is not persuasive.

The facts and circumstances of this case fully warranted the conclusion that the plaintiff was "a regular paid member of a municipal police department" and thereby entitled to benefits under General Statutes § 7-433c. See *Kevorkian* v. *Peter Paul, Inc.,* 3 Conn. App. 335, 488 A.2d 102 (1985). The commissioner's decision not only reflected a correct application of the appropriate law, it also promoted a manifestly just result.

There is no error.

In this opinion the other judges concurred.