******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# CHRISTOPHER A. CLARK *v.* TOWN OF WATERFORD, COHANZIE FIRE DEPARTMENT ET AL.(AC 44170)

Bright, C. J., and Moll and Clark, Js.

*Syllabus*

The defendant employer appealed to this court from the decision of the Compensation Review Board, which affirmed the decision of the Workers' Compensation Commissioner that the plaintiff's claim for benefits as a result of heart disease was compensable under the Heart and Hypertension Act (§ 7-433c). The defendant claimed that the board improperly affirmed the commissioner's award because the plaintiff was not a "member" of the fire department pursuant to statute (§ 7-425 (5)) before July 1, 1996, and, thus, was precluded from receiving § 7-433c benefits. The commissioner found that the plaintiff, who was hired as a part-time firefighter with the defendant in 1992, and as a full-time firefighter in 1997, was employed in 1992 for purposes of § 7-433c and, thus, was entitled to benefits. After the board affirmed the commissioner's decision, the defendant appealed to this court. *Held* that the board properly affirmed the commissioner's award: although §§ 7-425 and 7-433c are both contained within part II of chapter 113 of the General Statutes, they do not concern the same subject matter and cannot be read together without reaching an absurd result, as § 7-425 defines terms related to the governance of a retirement fund provided by the state for participating municipalities and their employees, including the term member, who must be a regular employee who receives pay from a municipality that participates in the fund, and § 7-433c mandates that municipal employers pay heart disease and hypertension benefits to qualified uniformed members of paid municipal fire departments, regardless of whether the municipality participates in the retirement fund; moreover, § 7-425 expressly defines terms "except as otherwise provided," and the definition of the term "member" in § 7-433c is such an exception to the definition of "member" in § 7-425.

Argued April 12—officially released July 27, 2021

*Procedural History*

Appeal from the decision of the Workers' Compensation Commissioner for the Second District finding that the plaintiff had sustained a compensable injury and awarding certain benefits, brought to the Compensation Review Board, which affirmed the commissioner's decision, and the named defendant appealed to this court. *Affirmed.*

*Kyle J. Zrenda*, with whom was *James P. Berryman*, for the appellant (named defendant).

*Eric W. Chester*, for the appellee (plaintiff).

*Opinion*

CLARK, J. The defendant town of Waterford, Cohanzie Fire Department (town)[1] appeals from the divided decision of the Compensation Review Board (board) affirming the finding and award of the Workers' Compensation Commissioner for the Second District (commissioner), ordering the town to accept as compensable a claim filed by the plaintiff, Christopher A. Clark, for heart benefits pursuant to General Statutes § 7-433c,[2] commonly referred to as the Heart and Hypertension Act. The town claims the board improperly affirmed the decision of the commissioner by failing to apply the definition of the term *member* as provided in General Statutes § 7-425 (5)[3] when determining whether the plaintiff was entitled to benefits under § 7-433c. The question on appeal is whether the plaintiff was a "uniformed *member* of a paid municipal fire department" while he was employed by the town as a part-time firefighter.[4] (Emphasis added.) General Statutes § 7-433c. We affirm the decision of the board.

The following facts are relevant to our resolution of the town's appeal. The town, a municipality organized under the laws of the state, hired the plaintiff as a part-time firefighter on May 24, 1992. Prior to being hired by the town, the plaintiff underwent and passed a physical examination that revealed no evidence of heart disease or hypertension.

As a part-time firefighter in Waterford, the plaintiff's responsibilities included answering the telephone at the fire station, keeping the fire station clean, responding to medical and fire emergencies, and maintaining fire apparatus. When he was working, the plaintiff wore a uniform shirt, badge, belt, pants, and black shoes, which is what other firefighters also wore. He was issued fire protective gear in the event he had to respond to a fire call. In 1997, the plaintiff was hired by the town as a full-time firefighter.

On or about June 24, 2017, the plaintiff suffered a myocardial infarction that required him to undergo quadruple bypass surgery. On August 14, 2017, the plaintiff filed a Form 30C,[5] seeking heart disease benefits under § 7-433c. Pursuant to General Statutes § 31-294c (b), the town gave notice of its intent to contest the compensability of the plaintiff's claim on the ground that he was not employed as a full-time firefighter until June 18, 1997, and therefore did not qualify for benefits because § 7-433c (b) precludes benefits for persons who began their employment on or after July 1, 1996.

The commissioner held a formal hearing on the plaintiff's claim on March 7, 2019. The plaintiff testified at the hearing, but he did not testify on direct examination as to the number of hours he customarily worked while he was employed as a part-time firefighter. On cross-examination, however, the plaintiff testified that he

worked assigned shifts and that the number of shifts he was assigned varied from week to week. In light of the plaintiff's testimony regarding his other employment and the irregular number of hours he worked per week as a part-time firefighter, the town argued that the plaintiff had failed to establish that he customarily worked twenty hours or more per week prior to July 1, 1996.

The town further argued that § 7-433c benefits are available only to "a uniformed *member* of a paid municipal fire department" hired on or before July 1, 1996, and that the term *member*, as used in § 7-433c, is controlled by the definition set forth in § 7-425 (5). The town pointed out that §§ 7-425 and 7-433c are both within part II of chapter 113 of the General Statutes. Section 7-425, titled Definitions, provides in relevant part that the "following words and phrases *as used in this part, except as otherwise provided*, shall have the following meanings . . . ." (Emphasis added.) Because *member* under § 7-425 (5) "shall not include any person who customarily works less than twenty hours per week" and the plaintiff was not hired as a full-time firefighter until June 18, 1997, the town contended that the plaintiff was not entitled to § 7-433c benefits, as "persons who began employment on or after July 1, 1996, shall not be eligible for any benefits pursuant to this section." General Statutes § 7-433c (b).

The plaintiff countered that he was entitled to benefits under § 7-433c because that statute does not on its face distinguish between part-time and full-time uniformed members of a paid municipal fire department, and the definition of *member* in § 7-425 (5) did not apply. As a result, he claimed that he met all of the requirements of § 7-433c because he was paid by the town and wore a uniform while he was a part-time firefighter prior to July 1, 1996.

In his findings and award, the commissioner found that while the plaintiff was a part-time firefighter, the number of hours he worked per week was consistent and was affected by the time of year, as well as the vacation, sick time, and any injuries sustained by the full-time staff. Some weeks he was assigned to work multiple shifts, and other weeks he was not assigned to work. As a part-time employee of the town, the plaintiff did not receive any holiday or vacation pay or benefits toward a pension. In 1997, the town employed the plaintiff as a full-time firefighter and paid him accordingly. Part-time and full-time firefighters were paid by the town, and their duties were the same.

The commissioner decreed that § 7-433c does not define the phrase "uniformed *member* of a paid municipal fire department" or distinguish between part-time and full-time employment status. (Emphasis added.) The commissioner, thus, determined that the plaintiff's date of employment was May 24, 1992, which was prior

to July 1, 1996, and that he was entitled to benefits pursuant to § 7-433c. The commissioner ordered the town to accept the plaintiff's June 24, 2017 myocardial infarction as a compensable impairment of his health.

The town filed a motion for articulation asking the commissioner to clarify how he had defined the term *member* in his award and urging the commissioner to adopt the statutory definition of *member* provided in § 7-425 (5). The town argued that if the § 7-425 (5) definition of *member* were used, it would mandate a finding that the plaintiff is not entitled to benefits under § 7-433c because he worked fewer than twenty hours per week through July 1, 1996. The town also argued that the record is devoid of evidence as to how many hours the plaintiff customarily worked per week while he was a part-time firefighter and that the plaintiff had failed not only to meet his burden of proof but also his burden of production.

In his July 17, 2019 articulation, the commissioner stated that the definition of *member* in § 7-425 (5) is "irrelevant to the issue at hand, as it pertains to the minimum requirements for participating in the Municipal Employees Retirement Fund. Given that the term *member* is not otherwise defined as it pertains to . . . § 7-433c, the plain meaning of the term *member* is utilized as it pertains to whether the [plaintiff] is a member of the fire department itself." (Emphasis added; internal quotation marks omitted.)

On July 24, 2019, the town filed a motion to correct, arguing that the commissioner's finding that the plaintiff's weekly hours were *consistent* when he was employed as a part-time firefighter was unsupported by the evidence in the record and that the commissioner misinterpreted the relevant statutory scheme in failing to apply the definition of *member* provided in § 7-425 (5). The commissioner denied the town's motion to correct in its entirety.

The town filed an appeal to the board and an amended appeal on August 6, 2019, after the commissioner denied its motion to correct. The town claimed that the commissioner erred by (1) finding that the plaintiff worked a consistent number of hours per week during his part-time employment as a firefighter, (2) applying his own definition of the term *member* rather than the definition provided in § 7-425 (5), (3) finding that the plaintiff's date of employment for purposes of § 7-433c was May 24, 1992, rather than June 18, 1997, (4) finding that the plaintiff is entitled to benefits pursuant to § 7-433c, and (5) ordering the town to accept the plaintiff's June 24, 2017 myocardial infarction as a compensable impairment of his health. The board heard arguments on the town's appeal on January 31, 2020, and issued its decision on July 15, 2020.

At the hearing before the board, the town argued that

the rules of statutory construction require that statutes be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law; see *Conway* v. *Wilton*, 238 Conn. 653, 664, 680 A.2d 242 (1996); and that it must be assumed that the legislature intended the definition of *member* in § 7-425 (5) to apply to § 7-433c. The logical conclusion, therefore, is that § 7-433c pertains only to those individuals who work twenty hours or more per week. The town further argued that it cannot reasonably be inferred that the plaintiff became a member of the fire department until he was hired on a full-time basis on June 18, 1997. That date put the plaintiff outside the ambit of § 7-433c, as the benefits provided by the statute are not available to persons who began employment on or after July 1, 1996. See General Statutes § 7-433c (b). The town also argued that the commissioner ignored the dictates of General Statutes § 1-2z by consulting extratextual sources for the meaning of *member*. The town, therefore, contended that the commissioner erred by concluding that the plaintiff had satisfied his burden of proof to establish that he was eligible for benefits under § 7-433c.

The board agreed with the town that it cannot reasonably be inferred from the subordinate facts that the plaintiff worked more than twenty hours per week prior to the time he became a full-time firefighter on June 18, 1997. The evidence demonstrated that the plaintiff was assigned shifts on an irregular basis and that his assignments depended on circumstances that varied according to the time of year and the internal staffing requirements of the department and did not provide an adequate basis for determining the number of hours the plaintiff worked. Although the board found the commissioner's use of the word *consistent* to describe the number of hours the plaintiff worked to be "inartful," it found that the balance of the commissioner's findings accurately reflected the plaintiff's testimony.

The board acknowledged the town's argument that both §§ 7-425 and 7-433c are contained within part II of chapter 113 of the General Statutes, which is titled Retirement. The board also noted the town's argument that § 7-425 (5) does not on its face limit itself to those statutes governing the Municipal Employees Retirement Fund (retirement fund) and that the legislature did not see "fit to move or place § 7-433c into a different part of the General Statutes, or even into a different part of [c]hapter 113." (Internal quotation marks omitted.) The board, however, was not persuaded that the legislature intended to reserve statutory heart and hypertension benefits solely for full-time firefighters.

In reaching its conclusion, the board relied on the preamble to an earlier revision of § 7-433c,[6] and *Grover* v. *Manchester*, 168 Conn. 84, 357 A.2d 922, appeal dismissed, 423 U.S. 805, 96 S. Ct. 14, 46 L. Ed. 2d 26 (1975),

in which our Supreme Court addressed the legislative intent and validity of the Heart and Hypertension Act.[7] The board also noted this court's decision in *Bucko* v. *New London*, 13 Conn. App. 566, 537 A.2d 1045 (1988), which held that the language "regular member of a paid municipal police department" did not distinguish between a temporary and permanent appointment.[8] (Emphasis omitted; internal quotation marks omitted.) Id., 570.

With respect to the present case, the board observed that § 7-433c does not contain the terms "full-time" or "part-time" and was mindful of the "principle of [statutory] construction that specific terms covering the given subject matter will prevail over general language . . . ." (Internal quotation marks omitted.) *Oles* v. *Furlong*, 134 Conn. 334, 342, 57 A.2d 405 (1948). The board concluded that there were no discernible differences between the responsibilities of full-time and part-time firefighters in the department, their job descriptions were the same, and the plaintiff wore the same uniform when he was promoted from a part-time to a full-time firefighter. The board found it "difficult to distinguish between the risks and responsibilities attendant upon being a part-time firefighter as opposed to a full-time firefighter."

The board noted, as well, that the legislature had passed General Statutes § 7-314a (d)[9] to extend a rebuttable presumption for hypertension and heart disease benefits to volunteer firefighters under the Workers' Compensation Act, citing *Evanuska* v. *Danbury*, 285 Conn. 348, 939 A.2d 1174 (2008). In *Evanuska*, our Supreme Court was called on to determine whether volunteer firefighters who were injured during the performance of "fire duties" were entitled to a rebuttable presumption of coverage, as contemplated by § 7-314a.[10] Id., 350. Our Supreme Court concluded that volunteer firefighters are eligible for that presumption by focusing on the nature of the volunteer firefighters' responsibilities, not their hourly status. Id., 366–67. The board therefore concluded that it would be logically inconsistent for the legislature to have endowed volunteer firefighters who suffer an impairment due to hypertension or heart disease with the ability to invoke a rebuttable presumption pursuant to § 7-314a (d) but to have deprived part-time firefighters of § 7-433c benefits.

The board was not persuaded by the town's argument that the legislature intended the definition of *member* in § 7-425 (5) to apply to § 7-433c. It concluded that applying the § 7-425 (5) definition to the plaintiff's claim would produce a result contrary to the letter and spirit of the heart and hypertension legislation, particularly in light of the plaintiff's long career with the town. The board, therefore, affirmed the commissioner's award of § 7-433c benefits to the plaintiff and rejected the town's contention that the commissioner's decision to

adopt the common definition of the word *member*, rather than the statutory definition set forth in § 7-425 (5), constituted an abuse of discretion.[11] Thereafter, the town appealed the decision of the board to this court.

On appeal before us, the town claims that the board erred when it affirmed the commissioner's award because it failed to apply the definition of the term *member* provided in § 7-425 (5) when considering whether the plaintiff was "a uniformed member of a paid municipal fire department" eligible for benefits pursuant to § 7-433c. We disagree.

As it did on appeal to the board, the town notes that § 7-425 is contained in part II of chapter 113 of the General Statutes, which governs the retirement fund. Part II also contains § 7-433c. The town also notes that, pursuant to the tenets of statutory construction, the legislature is presumed to have created a harmonious and consistent body of law and that courts are required to read statutes together. Because § 7-425 is not by its terms expressly limited to those statutes governing the retirement fund and because the legislature placed § 7-433c in part II of chapter 113 of the General Statutes, the town contends that the legislature must have intended the definition of *member* in § 7-425 (5) to apply to § 7-433c. As was the case before the board, the town's argument is predicated on the fact that § 7-425 provides in relevant part that "[t]he following words and phrases *as used in this part, except as otherwise provided,* shall have the following meanings . . . (5) 'Member' means any regular employee . . . receiving pay from a participating municipality . . . but shall not include any person who customarily works less than twenty hours a week . . . ."[12] (Emphasis added.) For those reasons, the town argues that the plaintiff is not eligible for benefits under § 7-433c because he did not work twenty hours or more per week prior to July 1, 1996.

The plaintiff responds that § 7-433c does not require a firefighter to be a full-time member of the department to be eligible for benefits. Moreover, he argues that he was employed as a firefighter before July 1, 1996, and, regardless of the number of hours he worked per week, he is entitled to benefits under § 7-433c. He points out that he has met all of the eligibility requirements of the statute: he passed a pre-employment physical examination that revealed no evidence of hypertension or heart disease, and he suffered an impairment of his health that was caused by heart disease and resulted in a disability. He claims that the town is attempting to add a new requirement that a claimant be employed full-time and argues that to add that requirement would alter the plain meaning of a clear and unambiguous statute.

The plaintiff also argues that the definition of the term *member* in § 7-425 (5) pertains only to the statutes within part II of chapter 113 that govern participation in the retirement fund and therefore is irrelevant to § 7-

433c, which governs the separate and distinct heart and hypertension benefits scheme available to disabled police officers and firefighters or their survivors. To support his position, the plaintiff points to language in the § 7-425 (5) definition of *member* that refers to other terms relevant only to the retirement fund, such as "compulsory retirement age," "state teachers retirement system," and "membership in any pension system," none of which is relevant to the type of benefits available under § 7-433c. The plaintiff, therefore, concludes that the definition of *member* in § 7-425 (5) is inapplicable to § 7-433c because applying that definition would reserve eligibility for heart and hypertension benefits solely for full-time firefighters, which is inconsistent with the plain language of § 7-433c and the clear intent of the legislature. For the reasons that follow, we agree with the plaintiff.

We begin our analysis by setting forth the well established standard of review in workers' compensation matters.[13] "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [Moreover, it] is well established that [a]lthough not dispositive, we accord great weight to the construction given to . . . statutes by the commissioner and [the] board. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that the traditional deference accorded to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . ." (Footnote omitted; internal quotation marks omitted.) *Holston* v. *New Haven Police Dept.*, 323 Conn. 607, 611–13, 149 A.3d 165 (2016).

The essence of the town's claim on appeal is that the commissioner failed to apply the § 7-425 (5) definition of *member* requiring a regular employee to work at least twenty hours per week to be eligible for benefits under § 7-433c. Resolution of that claim presents a heretofore undecided question of statutory construction. As a result, our review of that claim is plenary.

It is well settled that "[w]here the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intent of the legislature and there is no need for statutory construction or a review of the legislative history." (Internal quotation marks omitted.) *Brocuglio* v. *Thompsonville Fire District #2*, 190 Conn. App. 718, 740, 212 A.3d 751 (2019). "When construing a statute, [o]ur fundamental objec-

tive is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 613–14.

"When interpreting the statutory provisions at issue in the present case, we are mindful of the proposition that all workers' compensation legislation, because of its remedial nature, should be broadly construed in favor of disabled employees. . . . This proposition applies as well to the provisions of [§] 7-433c . . . because the measurement of the benefits to which a § 7-433c claimant is entitled is identical to the benefits that may be awarded to a [claimant] under . . . [the Workers' Compensation Act]." (Internal quotation marks omitted.) *Ciarlelli* v. *Hamden*, 299 Conn. 265, 277–78, 8 A.3d 1093 (2010). "[I]n construing workers' compensation law, we must resolve statutory ambiguities or lacunae in a manner that will further the remedial purpose of the [Workers' Compensation Act]. . . . [T]he purposes of the [Workers' Compensation Act] itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Internal quotation marks omitted.) *Hart* v. *Federal Express Corp.*, 321 Conn. 1, 19, 135 A.3d 38 (2016); see also Regs., Conn. State Agencies § 31-301-8.

Our Supreme Court previously determined that § 7-433c was not ambiguous. See *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 612 n.6. At the time the court made that determination, however, it had not been asked to construe the meaning of the term *member* and the interplay between §§ 7-425 (5) and 7-433c.[14]

Sections 7-425 and 7-433c are both contained within part II of chapter 113 of the General Statutes, which is titled Retirement. The tenets of statutory construction require that statutes related to the same subject matter be read together and that "specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise

prove controlling." (Internal quotation marks omitted.) *State* v. *State Employees' Review Board*, 239 Conn. 638, 653, 687 A.2d 134 (1997). Moreover, "[a]lthough the title of a statute provides some evidence of its meaning, the title is not determinative of its meaning. . . . [B]old-face catchlines in the titles of statutes are intended to be informal brief descriptions of the contents of the [statutory] sections. . . . These boldface descriptions should not be read or considered as statements of legislative intent since their sole purpose is to provide users with a brief description of the contents of the sections." (Internal quotation marks omitted.) *McCall* v. *Sopneski*, 202 Conn. App. 616, 625, 246 A.3d 531 (2021). We, therefore, examine the language of the statutes to determine whether §§ 7-425 (5) and 7-433c concern the same subject matter and must be read together. We conclude that they do not and cannot be read together without reaching an absurd result.[15]

With respect to § 7-425 (5), the town has focused on the phrase "customarily works less than twenty hours a week . . . ." Our reading of § 7-425 is not so circumscribed. Section 7-425 begins: "The following words and phrases used in this part, *except as otherwise provided*, shall have the following meanings . . . ." (Emphasis added.) Section 7-425 (5), in turn, provides in relevant part that " '[m]ember' means any regular employee or elective officer receiving pay from a *participating municipality* . . . who has been included by *such municipality in the pension plan as provided in section 7-427*, but shall not include any person who customarily works less than twenty hours a week if such person entered employment after September 30, 1969 . . . ." (Emphasis added.) Section 7-425 (2) defines a "participating municipality" as "any municipality that has accepted this part, *as provided in section 7-427* . . . ." (Emphasis added; internal quotation marks omitted.) In other words, "participating municipality" means a municipality that participates in the retirement fund.

The retirement fund governed by § 7-425 is the voluntary public pension plan provided by the state for participating municipalities and their employees and elective officers. "The statutory framework establishing and governing the retirement system for certain municipal employees is codified at General Statutes § 7-425 et seq., and is referred to as the Municipal Employees' Retirement Act. See *Maturo* v. *State Employees Retirement Commission*, 326 Conn. 160, 172, 162 A.3d 706 (2017). Section 7-425 defines a [m]ember of the retirement system as, among other things, any regular employee or elective officer receiving pay from a participating municipality . . . who has been included by such municipality in the pension plan as provided in [General Statutes §] 7-427 . . . . General Statutes § 7-425 (5). [Section] 7-427 (a) authorizes each municipality to opt into the retirement system with respect to any department or departments that it chooses to designate

for participation." (Internal quotation marks omitted.) *Bracken* v. *Windsor Locks*, 182 Conn. App. 312, 314–15 n.2, 190 A.3d 125 (2018). Not all municipalities or departments participate in the retirement fund. See Office of the State Comptroller, "Who Is in CMERS? Participating Municipalities," (last modified September 13, 2016), available at https://www.osc.ct.gov/rbsd/cmers/plan-doc/MasterTownListSept132016.pdf (last visited July 16, 2021). As a result, and significantly for purposes of our analysis, a *member* within the meaning of §§ 7-425 (2) and 7-425 (5) refers only to those regular employees or elective officers who receive pay from a municipality that participates in the retirement fund.

The plain language of § 7-433c (a), on the other hand, makes clear that heart and hypertension benefits shall be paid by a "municipal employer" to a qualifying uniformed firefighter or regular member of a municipal police department, regardless of whether the municipality participates in the retirement fund. That statute provides in relevant part: "Notwithstanding any provision of chapter 568 or any other general statute . . . in the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department . . . suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or . . . disability, he or his dependents, as the case may be, *shall receive from his municipal employer* compensation and medical care . . . . As used in this section, '*municipal employer*' has the same meaning as provided in section 7-467. . . ." (Emphasis added.)[16] General Statutes § 7-433c (a).

Consequently, § 7-433c requires all municipal employers, as defined in General Statutes § 7-467, to pay compensation and medical care to any "uniformed member of a paid municipal fire department or regular member of a paid municipal police department" who suffers any condition or impairment of health caused by hypertension or heart disease resulting in death or temporary or permanent, total or partial disability, or dependents, as the case may be. There is no language in § 7-433c to suggest that heart and hypertension benefits are not available to uniformed firefighters and regular police officers who are paid by municipalities that do not participate in the retirement fund. On the contrary, such an interpretation conflicts with the plain language of § 7-433c, which makes clear that firefighters and police officers who suffer from hypertension or heart disease that results in death or disability *shall* receive the benefits available under that statute from their municipal employers.

Though the plain language of § 7-433c is clear and we therefore need not go further, we note that the town's interpretation also leads to an absurd result that heart and hypertension benefits are available only to

uniformed firefighters employed and paid by municipalities that participate in the retirement fund. Firefighters working for a municipal employer not participating in the voluntary, state administered retirement fund would be ineligible for heart and hypertension benefits, regardless of the number of hours they worked per week. Section 7-425, by its own terms, does not require such a result. On the contrary, § 7-425 explicitly provides that the definitions set forth therein shall apply "except as otherwise provided." We conclude that the use of the term *member* in § 7-433c is one of the exceptions expressly contemplated by § 7-425, itself. The board, therefore, properly affirmed the commissioner's decree that the town accept the plaintiff's heart disability as a compensable injury under § 7-433c.[17]

The decision of the Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] The defendant Connecticut Interlocal Risk Management Agency appeared before the commissioner but did not appear before the board and did not file a brief in the present appeal.

[2] General Statutes § 7-433c provides: "(a) Notwithstanding any provision of chapter 568 or any other general statute, charter, special act or ordinance to the contrary, in the event a *uniformed member* of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. If successful passage of such a physical examination was, at the time of his employment, required as a condition for such employment, no proof or record of such examination shall be required as evidence in the maintenance of a claim under this section or under such municipal or state retirement systems. The benefits provided by this section shall be in lieu of any other benefits which such policeman or fireman or his dependents may be entitled to receive from his municipal employer under the provisions of chapter 568 or the municipal or state retirement system under which he is covered, except as provided by this section, as a result of any condition or impairment of health caused by hypertension or heart disease resulting in his death or his temporary or permanent, total or partial disability. As used in this section, 'municipal employer' has the same meaning as provided in section 7-467.

"(b) Notwithstanding the provisions of subsection (a) of this section, those persons *who began employment on or after July 1, 1996*, shall not be eligible for any benefits pursuant to this section." (Emphasis added.)

General Statutes § 7-467 (1) provides in relevant part: " 'Municipal employer' means any political subdivision of the state, including any town, city, borough, district, district department of health, school board, housing authority or other authority established by law . . . ."

[3] General Statutes § 7-425 provides in relevant part: "The following words and phrases as used in this part, except as otherwise provided, shall have the following meanings . . .

"(5) 'Member' means any regular employee or elective officer receiving pay from a participating municipality . . . who has been included by such

municipality in the pension plan as provided in section 7-427, but shall not include any person who *customarily works less than twenty hours a week* if such person entered employment after September 30, 1969 . . . ." (Emphasis added.)

General Statutes § 7-425 (2) provides: " 'Participating municipality' means any municipality that has accepted this part, as provided in section 7-427 . . . ."

General Statutes § 7-425 et seq. is referred to as the Municipal Employees' Retirement Act. See *Lambert* v. *Bridgeport*, 204 Conn. 563, 566, 529 A.2d 184 (1987).

[4] The town also claims that the commissioner's finding that the plaintiff worked a consistent number of hours per week as a part-time firefighter arises from an inference unreasonably drawn from the subordinate facts. The town raised this claim on appeal to the board. The board agreed with the town that the record lacked a sufficient evidentiary foundation to draw an inference that the plaintiff worked a consistent number of hours per week as a part-time firefighter, but concluded that heart and hypertension benefits pursuant to § 7-433c were not reserved solely for full-time firefighters. We need not address the town's claim regarding the number of hours the plaintiff worked per week because we agree with the board that the definition of *member* set forth in § 7-425 (5) does not apply to § 7-433c.

[5] Form 30C is the document prescribed by the Workers' Compensation Commission to be used to file a claim pursuant to the Workers' Compensation Act. See *Brocuglio* v. *Thompsonville Fire Dept. #2*, 190 Conn. App. 718, 722 n.4, 212 A.3d 751 (2019).

[6] The preamble to General Statutes (Supp. 1971) § 7-433c states in relevant part: "In recognition of the peculiar problems of uniformed members of paid fire departments and regular members of paid police departments, and in recognition of the unusual risks attendant upon these occupations, including an unusually high degree of susceptibility to heart disease and hypertension, and in recognition that the enactment of a statute which protects such fire department and police department members against economic loss resulting from disability or death caused by hypertension or heart disease would act as an inducement in attracting and securing persons for such employment, and in recognition, that the public interest and welfare will be promoted by providing such protection for such fire department and police department members, municipal employers shall provide compensation . . . ."

[7] With respect to the Heart and Hypertension Act, our Supreme Court stated that "courts are bound to assume that the legislature, in enacting a particular law, did so upon proper motives to accomplish a worthy objective. Although [§ 7-433c] is not regulatory, it does impose upon a town a financial obligation which, like restrictive regulations, is justified in the interest of promoting public safety . . . .

"It is difficult to call to mind any field of activity more closely related to the public safety than that which seeks to encourage qualified individuals to seek employment as [firefighters] and [police officers]. It is evident from the preamble to § 7-433c, that the legislature took into consideration the peculiar problems and unusual risks attendant upon these occupations in determining that they properly occupy a different status from other municipal employees." (Footnote omitted; internal quotation marks omitted.) *Grover* v. *Manchester*, supra, 168 Conn. 88.

[8] On appeal, the town claims that *Bucko* is distinguishable from the facts of the present case. The issue in *Bucko* turned on the definition of the term *regular*, not *member* and did not consider the number of hours an employee worked. In holding for the claimant, the court noted that "[n]owhere in § 7-433c is there a requirement that any appointment to the regular police force must be a 'permanent' appointment. The qualifiers 'permanent' or 'temporary' are not mentioned in the statute . . . ." *Bucko* v. *New London*, supra, 13 Conn. App. 570. Our resolution of the present appeal does not rest on this court's decision in *Bucko*.

[9] General Statutes § 7-314a (d) provides in relevant part: "For the purpose of adjudication of claims for the payment of benefits under the provisions of chapter 568, any condition of impairment of health occurring to an active member of a volunteer fire department . . . while such member is in training for or engaged in volunteer fire duty . . . caused by hypertension or heart disease resulting in death or temporary or permanent total or partial disability, shall be presumed to have been suffered in the line of duty and within the scope of his employment, provided such member had previously successfully passed a physical examination by a licensed physician

appointed by such department . . . which examination failed to reveal any evidence of such condition.''

[10] General Statutes § 7-314 (a) defines the term "fire duties."

[11] One member of the board dissented, stating: "[A]lthough the evidence provides an adequate basis for the reasonable inference that the [plaintiff] was 'uniformed,' it does not provide a sufficient basis for inferring that the [plaintiff] was a 'member' of the fire department as contemplated by the definition set forth in § 7-425 (5). Given that the definition of 'member' provided by the legislature excludes 'any person who customarily works less than twenty hours per week,' I am unable to conclude that the factual circumstances of the [plaintiff's] employment satisfy the statutory requirements of § 7-433c."

[12] Section 7-425 defines the following words and phrases as used in part II of chapter 113, except as otherwise provided: municipality, participating municipality, legislative body, retirement commission, member, pay, fund and fund B, continuous service and service, system, Social Security Act, and regional emergency telecommunications center.

[13] As this court recently noted: "[Our Supreme Court] has stated on many occasions that [t]he procedure for determining recovery under § 7-433c is the same as that outlined in chapter 568 [of the Workers' Compensation Act], presumably because the legislature saw fit to limit the procedural avenue for bringing claims under § 7-433c to that already existing under chapter 568 rather than require the duplication of the administrative machinery available . . . ." (Internal quotation marks omitted.) *Brucuglio* v. *Thompsonville Fire Dept. #2*, 190 Conn. App. 718, 731, 212 A.3d 751 (2019).

[14] The issue in *Holston* v. *New Haven Police Dept.*, supra, 323 Conn. 610, was whether "hypertension and heart disease were separate diseases, each with its own one year limitation period for filing a claim for benefits."

[15] Although we conclude that the statutes do not address the same subject matter, the statutes concern in different ways the benefits to which municipal employees may be entitled when they come to the end of their municipal employment either through disability or through time or age. There is, therefore, a certain organizational logic to placing the Heart and Hypertension Act, § 7-433c, in part II of chapter 113, titled Retirement, which principally concerns the retirement fund.

[16] General Statutes § 7-467 (1) provides in relevant part: " 'Municipal employer' means any political subdivision of the state, including any town, city, borough, district, district department of health, school board, housing authority or other authority established by law . . . ."

[17] Although we find the plain meaning of the statutes at issue to be sufficiently clear and unambiguous to dispose of the town's claims on appeal, it is worth noting that the town's proffered interpretation of § 7-433c also is at odds with the original purpose of the Heart and Hypertension Act. See footnote 7 of this opinion. The history of that act and the efforts the legislature made to amend it to withstand constitutional scrutiny demonstrate that the legislature intended for heart and hypertension benefits to be available to any uniformed member of a paid municipal fire department or regular member of a paid municipal police department, not just those who work for a city or town that opts into the retirement fund. See *Morgan* v. *East Haven*, 208 Conn. 576, 580–81, 546 A.2d 243 (1988); see also *Brennan* v. *Waterbury*, 331 Conn. 672, 683, 207 A.3d 1 (2019) (explaining subsequent legislation in response to *Morgan*).